United States Bankruptcy Court
F I L E D
JUL 2 1 2004
C.L. AUSTIN, CLERK
Milwaukee, Wisconsin

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re

Robert Pokrzywinski; and
Deborah Pokrzywinski,

          Debtors.

Case No. 04-20652

(Chapter 13)

## MEMORANDUM DECISION

The chapter 13 Debtors objected to the interest component in the secured proof of claim filed by Mitsubishi Motors Credit of America, Inc. ("Mitsubishi"). Based on *In re Till,* 301 F.3d 583 (7th Cir. 2002), the Debtors argued that the interest rate payable on the claim should be the contract rate, which in this case happened to be 0%. The Supreme Court has now reversed the Seventh Circuit decision in *Till*, with a plurality holding that a formula approach, not the presumptive contract rate, should be used to determine chapter 13 cram down interest rates. *Till v. SCS Credit Corp.*, 124 S. Ct. 1951, 1961 (2004).

At the final hearing on the claim objection, after the Supreme Court decided *Till*, the Debtors orally modified their objection to contend that Mitsubishi should not be allowed "add-on" interest on the claim. The Debtors argued that the interest rate in Mitsubishi's claim should be reduced to prime plus 1.5%. Mitsubishi did not disagree that the interest rate should be adjusted to prime plus 1.5%, but claimed that the interest component of the claim should be calculated as add-on interest, even after *Till*.[1]

---

[1] This court took the matter under advisement in order to issue this opinion, believing, as aptly stated by the Fifth Circuit Court of Appeals: "Chapter 13 cases, because of the greater need to reduce litigation expenses associated with an individualized discount rate determination, call for particular guidance in the selection of the appropriate post-confirmation interest rate. The type of expert testimony on valuation that is presented in complex Chapter 11 cases is not practical for the typical Chapter 13 case." *Green Tree Financial Servicing Corp. v. Smithwick (In re Smithwick)*, 121 F.3d 211, 214-215 (5th Cir. 1997).

The facts are neither complex nor disputed. The Debtors filed a chapter 13 bankruptcy petition on January 20, 2004. Mitsubishi is among the Debtors' secured creditors, having financed the Debtors' 2003 Mitsubishi Outlander SUV. Their chapter 13 plan calls for the Debtors to pay $465 per month to the chapter 13 trustee. The Debtors propose to keep the Outlander, and to pay Mitsubishi its pro rata share of the plan payments for 60 months, or until Mitsubishi's allowed secured claim is paid in full. Under this so-called "cram down" option of Bankruptcy Code § 1325(a)(5)(B)(ii), the Debtors' plan must provide Mitsubishi with distributions of a value, as of the effective date of the plan, equal to Mitsubishi's allowed secured claim.[2] The Debtors and Mitsubishi agree that the value of the Outlander, i.e., the amount of the allowed secured claim, is $13,500.[3] Since the plan proposes to pay Mitsubishi over 60 months, Mitsubishi is entitled to interest on the amount of the allowed secured claim; the interest component will allow Mitsubishi to receive the value of its collateral as of the effective date of the plan. In its claim, Mitsubishi added $7,931.25 to the value of the Outlander for "Add On Interest for 60 months" for a total secured claim of $21,431.25. The add-on interest rate claimed by Mitsubishi is 11.5%, which translates to 20% when computed on a simple interest basis. The Debtors vigorously objected to the interest component of the claim. In light of *Till,* Mitsubishi offered to reduce the interest to prime plus 1.5%, but, in keeping with local practice, sought to apply the interest rate on an add-on basis.

---

[2] The cram down is one of three alternatives available for treatment of secured creditors under § 1325(a)(5); the others are surrendering the collateral or obtaining the secured creditor's acceptance of some other treatment under the plan.

[3] *See Associates Commercial Corp. v. Rash,* 520 U.S. 953, 965 (1997), holding that in cram down cases in which the parties cannot agree on the value of the collateral, replacement value should be used.

"Add-on interest" traditionally has been allowed in this district for cram down of secured claims in chapter 13 cases, with the add-on interest rate generally in the neighborhood of 6.25%. *See In re Weske*, 203 B.R. 694, 695 (Bankr. E.D. Wis. 1996). To calculate add-on interest, the total amount of interest over the term of the loan is added to the principal sum, and the borrower repays the combined amount in monthly installments. *Williams v. Seeley (In re Williams)*, 227 B.R. 83, 86 (Bankr. E.D. Va. 1998). "Since the lender calculates interest on the original balance, instead of the declining balance as in simple interest loans, the effective rate of interest is almost double the stated rate." *Id.* at 86-87 (citations omitted). Add-on interest was "formerly quite common before the Truth-in-Lending laws were enacted [and] had merit in the days of pencil and paper calculations because of its simplicity." Darrell J. Bird, *Potpurri, available at* http://www.financiaco.com/interest.htm (last modified March 27, 2004). However, Truth in Lending laws now require consumer lenders to disclose interest rates on an annual basis, based on the actual balance of the loan. And today's computers enable chapter 13 trustees to calculate interest on a declining balance with the push of a button. Does *In re Till* mean that creditors in this district can no longer claim add-on interest in chapter 13 cram down cases?

In *Till,* the bankruptcy court confirmed a plan over the creditor's objection in which the chapter 13 debtors proposed to pay interest of 9.5% per year, based on the prime rate of 8%, plus 1.5% to account for the risk of nonpayment posed by borrowers in financial difficulty. *Till,* 124 S. Ct. at 1957. The creditor appealed, and the district court reversed, ruling that Seventh Circuit precedent required interest at the rate that the creditor could have obtained if it had foreclosed, sold the collateral and reinvested the proceeds in new loans. There was undisputed evidence that the secured creditor in *Till,* a lender in the "subprime" market, could make new loans at 21%;

3

accordingly, the district court adopted 21% as the cram down rate. *Id.* The debtors appealed, and the Seventh Circuit Court of Appeals endorsed a modified version of the district court's "coerced loan" approach. The court of appeals found that the contract rate between the parties was *presumptively* the rate that the creditor would receive in making a new loan to a similarly situated debtor, but that evidence from either the debtor or the creditor could rebut the contract rate as too high or too low. *Till*, 124 S. Ct. at 1957-58. The court of appeals rate was dubbed the "presumptive contract rate."

After considering the various approaches taken in the courts below and other jurisdictions, the Supreme Court adopted a formula rate for cram down interest based on the prime rate plus an appropriate adjustment to account for the risk of nonpayment. *Till*, 124 S. Ct. at 1961. The Court did not decide the amount of the adjustment, but suggested that an increase of 1% to 3% may be appropriate, as described in *In re Valenti*, 105 F.3d 55, 64 (2nd Cir. 1997), abrogated on other grounds by *Associates Commercial Corp. v. Rash,* 520 U.S. 953 (1997). The formula method of computing cram down interest rates was chosen for its ease of determination, and in recognition of the policy that the bankruptcy court should approve a rate that is "high enough to compensate the creditor for its risk but not so high as to doom the plan." *Till*, 124 S. Ct. at 1962.

Neither *Till* nor the multitude of other cases addressing the appropriate chapter 13 cram down interest rate specifically address whether the interest should be calculated as add-on interest or simple interest based on the declining balance of the allowed secured claim. But it is apparent from checking the math that add-on interest is <u>not</u> being charged. For example, in his dissent in *Till,* Justice Scalia stated that the risk adjustment of 1.5% on the $4,000 allowed

4

secured claim would amount to $60 "total," based on the interest charge on the "average balance" of the claim over the two years that it would be paid under the plan. 124 S. Ct. at 1974 n.8. If Justice Scalia had used add-on interest, he would have added the interest at 1.5% for the life of the plan (2 years in *Till*) to the allowed secured claim of $4,000, resulting in a total claim of $4,120, or "total" interest of $120. *See also, In re Scott*, 248 B.R. 786, 788 (Bankr. N.D. Ill. 2000) (simple interest of 9% on allowed secured claim of $9,075 yielded $200 per month payments; add-on interest of 9% would result in payments of $230.11 for the same 56-month plan.)

Moreover, the courts adopting a contract rate or market rate for cram down interest obviously were not applying add-on interest. The Truth in Lending Act would have applied to the contracts construed in those cases, and that Act provides for the determination and disclosure of interest rates in consumer transactions as an "Annual Percentage Rate." 15 U.S.C. § 1602 (2004). With respect to calculating the annual percentage rate, the Truth in Lending Act states:

> (a) "Annual percentage rate" defined. The annual percentage rate applicable to any extension of consumer credit shall be determined, in accordance with the regulations of the Board.
>
> (1) in the case of any extension of credit other than under an open end credit plan, as
>
> (A) that nominal annual percentage rate which will yield a sum equal to the amount of the finance charge when it is applied to the <u>unpaid balances of the amount financed</u>, calculated according to the actuarial method of allocating payments made on a debt between the amount financed and the amount of the finance charge, pursuant to which a payment is applied first to the accumulated finance charge and the balance is applied to the unpaid amount financed; or
>
> (B) the rate determined by any method prescribed by the Board as a method which materially simplifies computation while retaining reasonable accuracy as compared with the rate determined under subparagraph (A).

5

15 U.S.C. § 1606 (emphasis supplied). *See Cox v. Knox County School Employees Credit Union (In re Cox)*, 114 B.R. 165 (Bankr. C.D. Ill. 1990) (explaining calculation and disclosure requirements of Truth in Lending Act and Regulation Z). The contract rate in *Till*, which would have been disclosed based on the Truth in Lending Act and Regulation Z, was stated as 21%. Judge Rovner called this rate "eye-popping" in her dissent in *Till*. 301 F.3d at 593. Using add-on methodology, *Till's* 21% annual percentage rate would have amounted to a conscience-shocking 36%.

That add-on interest nearly doubles the interest stated as an annual percentage rate clearly militates against its adoption. The Supreme Court cautioned that the rate should not be so high as to doom the chapter 13 plan. *Till*, 124 S. Ct. at 1963.

> Courts requiring a high interest rate treat creditor protection as cram down's major purpose. A higher interest rate gives secured creditors greater compensation for the losses and risks associated with the delayed payment of their claims. Higher rates force more conversions to Chapter 7 liquidation, allowing secured creditors to take possession of their collateral or of the proceeds of its sale.

Waltraud S. Scott, *Comment: Deferred Cash Payments to Secured Creditors in Cram down of Chapter 11 Plans: a Matter of Interest* 63 Wash. L. Rev. 1041, 1045 (October 1988). After *Till*, the over-emphasis on the secured creditors' risk at the expense of the feasibility of the plan and the dividend to the unsecured creditors is no longer appropriate.

In this case, Mitsubishi claimed an add-on interest rate of 11.25%. According to the Supreme Court, the bankruptcy court should approve a cram down formula interest rate based on the national prime rate plus a risk adjustment to be determined after an evidentiary hearing if the parties cannot agree. According to online sources, the prime rate is currently 4.25%. Assuming that the correct adjustment is 1.5%, the cram down interest rate appropriate for Mitsubishi's

6

claim is 5.75%, on a declining basis. Comparison of the formula rate of 5.75% to the effective rate of 20% contained in the claim, leaves no doubt that add-on interest results in a windfall to Mitsubishi that is untenable after the Supreme Court's decision in *Till*. Reducing the interest to the "traditional" add-on rate of 6.25% results in a simple interest rate of 11.3%, which is also excessive under *Till*. Mitsubishi's offer to accept prime plus 1.5% on an add-on basis likewise will not save the claim. That translates to a simple interest rate of 10.5%, almost 3% higher than the highest formula rate (prime plus 3%) suggested by the Supreme Court.

Accordingly, an Order will be entered allowing Mitsubishi's claim with simple interest of 5.75%, reflecting the prime rate plus 1.5% that the parties agreed upon. Interest will not be allowed on an add-on basis over the objection of the Debtors.

Dated: July 21, 2004

By the Court:

/s/ Susan Kelley
Susan V. Kelley
U.S. Bankruptcy Judge
